IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 17-cr-00384-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    **ERIC RONALD BOLDUAN**

    Defendant.

---

### ERIC BOLDUAN'S PLEA OF GUILTY AND STATEMENT OF FACTS RELEVANT TO SENTENCING (WITHOUT PLEA AGREEMENT)

---

Defendant, Eric Ronald Bolduan, personally and by counsel, Matthew Golla, submits this Plea of Guilty and Statement of Facts Relevant to Sentencing:

### I. PLEA OF GUILTY

Eric Bolduan intends to plead guilty to the Indictment, which charges him with 3 counts of Stalking, in violation of 18 U.S.C. § 2261(A)(2)(B), and 3 counts of Interstate Communications, in violation of 18 U.S.C. § 875(c), **without a plea agreement**.

### II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offenses to which this plea is being tendered are as follows:

18 U.S.C. § 2261A(2)(B) Stalking:

1. Defendant used any interactive computer service or any other facility of interstate and foreign commerce, that it, the internet;

2. Defendant did so to engage in a course of conduct, including sending messages over the internet;

COURT EXHIBIT 1

3. That by engaging in such a course of conduct, the Defendant acted with the intent to injure, harass, and intimidate a person, and

4. That such course of conduct caused substantial emotional distress to that person, and would be reasonably expected to cause substantial emotional distress to such person.

18 U.S.C. § 2266(2) expressly defines a "course of conduct" as "a pattern composed of 2 or more acts, evidencing a continuity of purpose."

18 U.S.C. § 875(c) Interstate Communications:

1. The defendant knowingly transmitted in a communication containing a threat to injure the person of another as charged in the indictment;

2. The communication was sent in interstate commerce or foreign commerce; and

3. The defendant transmitted the communication for the purpose of issuing a threat.

**The United States advises that it agrees (✓), disagrees ( ), or takes no position ( ).**

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 2261A(2)(B) is: not more than 5 years imprisonment; not more than $250,000 fine, or both; not more than 3 years supervised release; $100 special assessment fee; plus restitution.

The maximum statutory penalty for a violation of 18 U.S.C. § 875(c) is: not more than 5 years imprisonment; not more than $250,000 fine, or both; not more than 3 years supervised release; $100 special assessment fee; plus restitution.

The Court will impose a separate sentence on each count of conviction and may, to the extent permitted by law, impose such sentences either concurrently with or consecutively to each other.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

**The United States advises that it agrees (✓), disagrees ( ), or takes no position ( ).**

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. If Mr. Bolduan is an alien, the conviction may cause him to be deported or confined indefinitely if there is no country to which he may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## V. FACTUAL BASIS TO SUPPORT THE PLEA OF GUILTY

The parties agree that there is a factual basis for the guilty plea[s] that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense[s] of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. §3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. §3553 factors, or to the Court's overall sentencing decision.

The parties agree as follows: The investigation began as a complaint by one female attending the University of Colorado, about emails, postings and texts from an unknown person or persons threatening to kill her and her sister. As the investigation continued, and more and more victims were discovered all over the country.

Bolduan's criminal behavior for each victim in the Indictment is as follows (identifying information is redacted with a blank underline, or with initials):

Count 1: Defendant began by posting pictures of ND on porn websites, listing her name, email address and comments about her sexual behavior. The images included real non-pornographic pictures of ND and also images that had the victim's face on the pornographic images.

On 28 November 2015, user "_____Exposer" created a post with eight images on the pornographic website cumonprintedpics.com. The title of the post was "Cum on my roommate's girlfriend" and contained the following text: "ND from Alamosa, Colorado _____@colorado.edu." Four of the images contained non-pornographic images of ND. The other images were pornographic in nature were not of the victim but of a female who resembled her.

On the same day 28, 2015, Defendant also created an imagefap.com (pornographic website) user account "athletehumper." He created and uploaded images to two galleries, one of which was titled "Exposed Slut ND - repost anywhere". The gallery contained 12 images. Three of the images were of the victim. The other nine images were pornographic in nature and were not of the victim but a female who resembled her.

The next day, ND discovered a posting to the myex.com website titled in her name. The post contained the same images as those posted to the imagefap.com website. The post contained the following text: "Horny little slut This whore is desperate for attention and will suck and fuck anyone to get it. She is useful for a good time but trying to date her is a waste - she'll just try to fuck all of your friends. The only reason to date her would be to try to get closer to her sister, who is a hot blonde." The purpose of the myex.com website appeared to be for people to submit compromising images of their ex-girlfriends or ex-boyfriends, so-called "revenge porn.".

On November 30, 2015, Defendant sent an email message to the victim's employer (which was received) via the business website contact form. The message claimed to be from "ryan.paulson@yahoo.com" stating, "I just wanted to express my concern with ND being one of

4

your instructors. She has a significant presence in the world of "adult" websites (i.e., "dirty pictures"). This seriously detracts from what would otherwise be a nice local small business."

On December 2, 2015, ND discovered yet another posting by the Defendant of her pictures to the imagefap.com pornographic website. The gallery was created by the imagefap.com user "coloradoslutexposer" and was titled "Exposed Slut ND - Repost Everywhere". The gallery contained 12 images and appeared to be the same as those posted by the "athletehumper" user.

On December 9, 2015, ND's employer received another message via the business website contact form from the Defendant, using a different fake name stating, "Great advertising for your business and ND!!! http://fapdu.com/slut-_____.pics". Fapdu.com is a pornographic website. On the same day the victim's father received the following from the Defendant (originating from a guerrillamail.com anonymous email address): "Hello __, Attached are some photos of [your daughter] that are spreading all over the internet. Thank you for producing such a hot daughter!" Attached to the email were four pornographic images of a female who appeared similar to the victim but was not her.

Counts 2 and 3: In November 2015, ND's twin sister JD started receiving comments on her blog that were sexually explicit, all posted by the Defendant.

For example, on November 28, 2015, JD received the following comment to her Wordpress weblog from Defendant, using her sister's name: "For someone who went to college, that is a pathetic list of skills. I've read some of your writing and it is not very good. As far as I can tell the only thing of any value you bring to this world is that hole between your legs." JD next received the following on her blog: "Sorry, that was overly harsh. Those pathetic little bumps you call breasts look like they would be fun to fondle to but other than pleasuring men, you seem worthless to me." The next comment stated: "Did you know that you don't even have to come into this page - the search engine listing itself exposes your cell phone number. You

really are a dumb blonde. BTW, in case you were wondering, this is the pic I use the most - does it for me every time: [an Instagram photo of JD]

The same day, as "_____Exposer", Defendant created a post with ten images of the victim and posted it to cumonprintedpics.com. The title of the post was "Cum on blonde slut athlete" and contained the following text: "JD Cell: 719-xxx-xxxx." None of the images were pornographic in nature and all were images of JD. Defendant then created user account "athletehumper" on the pornographic website imagefap.com. He created and uploaded images to a gallery titled "Athletic Slut JD - Non Nude". The gallery contained 20 images of the victim which were not pornographic in nature.

On or about March 17, 2016, the victim received the following comment to her weblog from Defendant using the name Adam Rapeu:

> Love dirty pics online of you and [sister]. Can't figure out which of you'd [sic] I'm going to fck [sic] first.

The same day JD received text messages from Defendant to her cell phone which were sent from Guerrillamail.com:

> "Hi, ___. My dick will soon be in you. Many times. By the time I'm done with you you'll never want another man in you again.

The next message an hour later said:

> "ND The latest dump of porn pics of you and your sister include details on how to contact you and a note indicating that that only reason pics of [sister] are being posted it out of the posters [sic] hate of you. Do the honorable thing for your sister and kill yourself you dumb slut."

JD next received a comment on her weblog, posted by Defendant calling her a dumb blonde slut again and stating that her "only talent" was being naked online.

On April 14, 2016, JD received a final comment to her weblog posted by Defendant as "Adam Smith:"

> Hi, _____! I don't have any plans this summer. Well I didn't, but now I've decided on how best to use my free time – hunting you! I will find you and watch you – sticking to the shadows, learning your patterns. When the time is right I will strike. I will tie you up and take you into my private area. I'll have my way with you for days on end – alternating between enjoying your body and beating it senseless. Once you are totally broken – mentally and physically – I will slowly suffocate you. As the air slips away, I'll be inside of you the whole time. That way I can feel your body nervously shake as you anticipate your demise. The finally [sic] jolts of your body as your life slips away will bring me to climax, such that I will explode in you at the exact moment you pass away. Poetic, isn't it? _____ considered herself happy and full of life. Little did she know soon she would be anything but.

Two weeks later on April 28, 2016, Defendant sent an email to JD's father that said:

> "Hi, I'm just writing to apologize ahead of time. I'm [sic] been watching __ for a long time now – watching her online and in person. Not a day has gone by in three years where I haven't achieved climax thinking about her. But I'm tired of just thinking – it's time to move to the next level. I'd like to say I'll be gentle with her body and treat her kindly, but I know that isn't true."

Defendant posted pornographic images on at least nine different pornography websites with JD's pictures non-pornographic included. On four different dates agents found evidence of uploads of her pictures together with pornographic images to pornography websites. The images all were made to look as though they were pictures of the victim. Those images were posted by Defendant from May 2016 to November 14, 2016.

Counts 4 and 5: On April 16, 2016, Defendant began stalking and threatening KK (a cross-country team member with JD at the University of Colorado). Defendant sent her three emails informing her of sexually explicit images of her on the internet. As with the other victims, Defendant copied pictures from her Instagram account, paired them with pornographic images of similar looking women and then posted them to pornographic websites. Defendant sent the images to CU staff, the CU athletic department, and CU track and soccer teams. The email stated:

> Hi _____. I wanted to let you know that a set of images containing inappropriate images of you have been posted to multiple sites and blogs. They've received thousands of views and continue to be reposted to additional sites and blogs. The postings include your name therefore everyone viewing them knows exactly who it is they are looking at.

7

> Numerous emails have also been sent out with these pictures attached. These were sent to students, coaches, and other faculty at our university and also to a number of other universities and colleges. All of these emails included your name.
>
> We want to make you famous. For the next few days we'll continue to repost these pictures on every site and blog we can find. Then we'll give you a well earned break and leave you alone for the remainder of this school year. Starting this fall, we'll start to get into the truly nasty stuff. Reposting pics with your contact information. Posting the information necessary for anyone to easy [sic] steal your identity. Offering cash rewards to anyone who rapes and/or beats you and submits a video showing it. The internet is full of crazy perverts - we just need to give them an incentive to focus their attention/obsession on you. We want to make sure you are never safe and have the resources necessary to accomplish that goal.
>
> If you would prefer we stop now and leave you alone, you have two options:
>
> 1. Leave the university and never come back
>
> 2. Commit suicide
>
> We would prefer #2, but will accept #1 as well. If you do neither of these options then we'll keep after you for as long as you are here. If you somehow survive long enough to graduate from CU, we'll take that to mean you want us sending pics to your new boss and coworkers at each new job you get. We'll be with you forever.
>
> I hate to end by asking a favor, but Monday is my birthday. It would mean a lot to me if you did #2 before then so I could spend my birthday enjoying the thought of a world without you in it.
>
> Thanks,
>
> Adam, founder of SlutSlayer

Defendant then sent another email that same day, stating:

> Here is a sample of the email that was sent out. This is just one of hundreds, with multiple recipients per email. Technology is wonderful when ruining someone's life!
>
> On Sat, 16 Apr, 2016 at 7:06:09 PM, me <mark_wetmore@easy.com> wrote:
>
> To: [VARIOUS Colorado.EDU recipients]
>
> Cc: [VARIOUS Colorado.EDU recipients]
>
> _____ has received national attention this week for her excelling during her senior year in high school. Please check out the attached photo.
>
> Congratulations _____ - you've made us all proud!

Attached to the email was a screenshot of a webpage where legitimate, non-

pornographic, images of KK were posted along with pornographic images of a female who

8

resembled the victim. Defendant also posted the pictures to several other pornography websites. Defendant, using another name, then commented on his own post from April 16:

> "Damn. I go to the same school as her - UC Boulder. After these pics leaked the athletics department scrubbed every reference to her from their site. Hahaha - I love it when bad shit happens to dumb sluts. Let [victim] know that you saw her hot little body – [victim]@Colorado.edu."

On Sept 6, 2016, Defendant sent KK another threatening email. The email stated:

> After thinking about it some more, maybe I'll do [another student] first so you have time to live with the guilt before following her to hell. I haven't decided yet. Either way I win - I'm going to love watching both of you choking on your own blood.

Defendant followed that email up with another threatening email on September 9, 2016, stating:

> Hi Kaleigh. I regret that you did not take the advice I gave you in the spring and leave CU. At the time I warned you that what happens to you this year would be far worse than last year. I'm annoyed that you ignored me and growing bored with you so let's jump right to the last phase - I've been following you, learning your schedule and daily patterns. When the time is right - probably while you are out for a run - I will slash your throat and watch as you bleed to death. I have the perfect knife picked out and have it nice and sharp, all ready for you. Since you couldn't obey my simple instructions, once I'm done with you I'll go after Devon. So now you can die knowing that your sister will soon be joining you and that it is all your fault.
>
> Love you,
>
> Me

Defendant sent another threat to KK on October 11, 2016:

> I've tried to be patient with you. I've tried to reason with you. I've done everything I can think of to give you a chance to have a long happy life, but you simply refuse to follow simple instructions. Removing yourself from the directory and not being listed on the CC roster are NOT the same as leaving the university and never coming back. Why do you have a death wish? I know that after I end your life I'm going to feel guilty about it for years to come, but that knowledge won't for one minute stop me from ending you. I really wish you had just left for both of our sake. Please reconsider soon before its too late. This is your final warning. I'm not going away.
>
> See you soon-ish.

<u>Count 6</u>:  On October 13, 2016, Defendant sent TT, a CU student and fellow cross-country team member with JD and KK, an email stating:

> Hi ___. You should have stayed in Georgia. But since you are here I want you to know that I intend to be the last person you see before you die. I saw you on campus last week and approached you from behind. As I got close I reached into my pocket and wrapped my hand around my knife. I so wanted to take it out and slash your neck with it, staring into your eyes as you choked to death on your own blood. Unfortunately there were too many people around. But I'm going to keep watching you, following you, and one day I will catch you in a situation where it is just the two of us. When the time comes that you are laying on the ground in pain, struggling for breath, know that the strange look on my face is me climaxing in my pants at the sight of you dying. I've been climaxing to photos of you for many weeks now - its going to be good to stare you directly in the eyes for the first time, especially given that it will be the last thing you will ever see.

Defendant followed up that email with another on October 17:

> Subject: Your UC-Stalker/Executioner
>
> Nice try you dumb cunnt [sic]. Making your instragram account private isn't going to stop me from jacking off to your pics - I'm one of your followers so all I have to do to see your hot little body is to log in. You shouldn't make your photos hard to get to - soon they are all everyone will have left of you.
>
> Have you told your family and friends yet? No point in waiting - you might wait too long. You don't want your last thoughts to be those of regret.
>
> Admit it - I've made your life easier. No pressure anymore to excel at athletics or academics - none of it matters anymore.
>
> I so look forward to our time together. Does it excite you to think about it? Makes me rock hard.
>
> Take care.
>
> p.s. Good luck trying to figure out which of your instagram followers I am!

A search warrant was obtained for the Bolduan residence and was executed on June 7, 2017. Eric Bolduan consented to an interview during the search and admitted to being responsible for all of the harassment and threatening activity targeting al the named victims in the Indictment. A large volume of digital evidence was seized from the residence and reviewed. Information corroborating Bolduan's statements that he was responsible for the activity was found on the evidence seized from the residence, including names and pictures of all four

10

victims. In a subsequent interview, Defendant admitted to intending to threaten and frighten the victims.

Bolduan described his *modus operandi*: he would download images of the victims from various public internet and social networking sites such as Instagram.com. He would then find online pornographic images of women who resembled the victim. He would upload the victim's legitimate, non-pornographic images alongside the pornographic images of the similar looking female to various pornographic websites. He would include the victim's name, school and contact information. The purpose was to portray the victim as involved in pornography and promiscuous behavior.

Bolduan would then email links of those pornographic postings to the victim herself, and to people the victim was associated with, including professors, teammates and family members. Bolduan would then send threatening emails to the victim, discussing how he was stalking her with the ultimate plan to rape, torture and kill her.

**The United States advises that it agrees (✓), disagrees ( ), or takes no position ( ).**

## VI. SENTENCING COMPUTATION

Mr. Bolduan understand that the imposition of a sentence in this matter is governed by 18 U.S.C. §3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, Mr. Bolduan set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A. The base guideline for interstate communications is § 2A6.1, with a base offense level of 12.

11

B.    There are an additional 2 points added under 2A6.1(2)(A) because the offense involved more than two threats.

C.    The adjusted offense level is 14.

D.    The base guideline for cyberstalking is § 2A6.2, with a base offense level of 18.

E.    There are an additional 4 points added under § 2A6.2(b) because the offense involved the threatened use of a dangerous weapon under (b)(1)(D) and a pattern of activity involving the same victim under (b)(1)(E).

F.    The adjusted offense level is 22.

G.    Pursuant to § 3D1.4, the following groupings each receive one unit, yielding a total of 3 units: the grouping of Count 1, the grouping of Counts 2 and 3, and the grouping of Counts 4 and 5. Pursuant to 3D1.4(c), the grouping of Count 6 yields no units. The resulting 3 units yield a 3-level increase, resulting in a combined adjusted offense level of 25.

H.    Defendant should receive a decrease in the offense level by -2 based upon his acceptance of responsibility. § 3E1.1(a). Defendant should also receive a decrease in the offense level by –1 for timely notifying the government. § 3E1.1(b). At sentencing, the government will make the appropriate motion for the one-point reduction. The adjusted offense level for the interstate communications is 11 and cyberstalking it is 22.

I.    The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be I.

J.    The career offender/criminal livelihood/armed career criminal adjustments do not apply.

K. The advisory guideline range resulting from these calculations is 8-14 months for the interstate communications counts and 41-51 months for the stalking counts. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense levels estimated above could conceivably result in a range from 8-14 months for criminal history category I, all the way to 27-33 months for criminal history category VI for interstate communications and 30-37 months for criminal history category I, all the way to 63-78 months for criminal history category VI for cyberstalking depending on the actual criminal history. The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

L. Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $ 4,000 to $40,000 plus applicable interest and penalties, for interstate communications and $10,000 to $100,000 plus applicable interest and penalties for cyberstalking.

M. Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is not more than 3 years.

Mr. Bolduan understands that although the Court will consider this guideline, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

Mr. Bolduan understands that the Court is free, upon consideration and proper application of all 18 U.S.C. §3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. §3553 factor.

The United States advises that it agrees ( ), disagrees ( ), or takes no position (X).

Date: 9/6/18

Eric ~~Michael~~ Bolduan
Defendant

Date: 9/6/18

Matthew C. Golla
Attorney for Defendant

**As to matters agreed to by the United States:**

Date: 9/6/18

Valeria Spencer
Assistant U.S. Attorney